IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN HILLER, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 20-CV-4445 |
| | : | |
| A. SOGO, *et al.*, | : | |
|     Defendants. | : | |

<u>**MEMORANDUM**</u>

**RUFE, J.**                                                                                                                                                 **AUGUST 4, 2021**

    Plaintiff Kevin Hiller, a federal prisoner, brings this *pro se* civil action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971), alleging constitutional violations based on deliberate indifference to his serious medical needs following an altercation in which he was injured. Also before the Court is Hiller's Motion to Proceed *In Forma Pauperis* (ECF Nos. 2 and 11) and his Prison Trust Fund Account Statement (ECF No. 12). For the following reasons, Hiller will be granted leave to proceed *in forma pauperis*, his claims against Defendants Sogo, Castillo, and Kistler will be allowed to proceed, the remainder of his Complaint will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and he will be granted leave to file an amended complaint.

    **I.**    **FACTUAL ALLEGATIONS[1]**

    Hiller's Complaint names the following Defendants: Registered Nurse A. Sogo, Lieutenant Castillo, Nurse Practitioner R. Kistler, Captain John Doe, Health Services Administrator John/Jane Doe, and Warden Sean Marler. (ECF No. 1 at 2).[2] Each is named in

---

[1] The facts set forth in this Memorandum are taken from Hiller's Complaint.
[2] The Court adopts the pagination assigned by the CM/ECF docketing system.

his or her individual capacity. Hiller's claims are based on events that occurred on September 8, 2018 at approximately 8:00 a.m. at the Federal Detention Center in Philadelphia, where Hiller was then incarcerated. (*Id.*) He alleges that on that date, he was involved in an altercation with another inmate, during which he was stabbed with a homemade knife in the back of his head. (*Id.* at 5.) Defendants Castillo and Sogo responded to a distress call and escorted Hiller to the infirmary for medical attention. Defendant Sogo examined Hiller and determined that he had suffered numerous injuries, including swelling on the left side of his chin and a one and one-half inch laceration on the back of his head. (*Id.*) Sogo is alleged to have told Hiller he would need to go to the hospital. (*Id.*) It is also alleged that Sogo provided a "patch" for the open wound on the back of Hiller's head. (*Id.* at 9.)

Hiller alleges he was taken to a lieutenant's office and locked in a five-foot by three-foot cage. He was told that a doctor was coming. (*Id.* at 5.) Within an hour, he became nauseated. He was allowed to use the next-door restroom, where he vomited, became dizzy, and fell to the floor. (*Id.* at 6.) After leaving the restroom, Hiller asked how much longer he would be locked in the cage; Defendant Castillo is alleged to have told him the doctor was on her way. (*Id.*) Hiller alleges he lost consciousness shortly after, and was discovered by several female workers, who tapped his cage to revive him. (*Id.*) He further alleges that he was suffering from a migraine headache, sweating, and had blurred vision. (*Id.*) Defendants Sogo and Castillo returned, commented that the doctor should have been there by that time, and left to place a follow up call. (*Id.*) The doctor – Defendant Kistler -is alleged to have arrived at 12:45 p.m. (*Id.*)

Hiller alleges that when he asked Defendant Kistler why it took her so long to arrive, she responded that she had just received the call, she was working out, and she did not think that the

2

call was that serious. (*Id.* at 7.) Upon examining Hiller, Defendant Kistler advised him that the wound on his head needed to be cleaned and sutured. When he requested a sedative for the pain, she reportedly provided one. (*Id.* at 7.) She then prepared the area for suturing by shaving it, sutured the wound, and escorted Hiller to the Special Housing Unit with a package of ointment and 12 800 mg Ibuprofen tablets. (*Id.*) Hiller fell asleep and alleges that when he awoke the next morning, his wound was bleeding. He experienced bouts of vomiting, dizzy spells, drowsiness, confusion, blurred vision, and headaches. Hiller requested that his wound be retaped, but alleges he received no response until a week later, when it was time to remove the sutures. (*Id.*)

Based on the foregoing, Hiller asserts deliberate indifference claims as follows: against Defendant Sogo, claiming she provided inadequate medical care (Count One) (*id.* at 9), against Defendant Castillo, claiming he delayed Hiller's access to medical care for more than four (4) hours (Count Two) (*id.* at 9-10), against Defendants Sogo and Castillo, claiming they failed to provide Hiller with immediate access to medical care, refused to give him access to a hospital, and locked him in a cage while he waited for medical attention (Count Three) (*id.* at 10), against Defendant Kistler, claiming she delayed providing adequate medical care in favor of continuing her daily routine, and kept Hiller from receiving adequate treatment for over four (4) hours (Count Four) (*id.* at 11), against John/Jane Does Health Services Administrator and Captain John Doe, based on allegedly inadequate training of staff to address serious medical emergencies, and an alleged failure to maintain policies and training (Count Five) (*id.* at 11-12), and against Defendant Marler, Warden of the Philadelphia Federal Detention Center, based on his alleged failure to provide meaningful management and adequate training to subordinates and staff to address serious medical emergencies, and to maintain adequate policies and training (Count Six)

(*id.* at 12-13.)  Hiller seeks recovery of medical expenses to properly treat his injury, to compensate him for impaired vision, and to compensate him for pain and suffering.  (*Id.* at 8.)

## II. STANDARD OF REVIEW

The Court grants Hiller leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).   The Court must "accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff," but disregard "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" in determining whether a plaintiff has stated a claim.  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 878 (3d Cir. 2018) (quotations omitted).  As Hiller is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

Hiller is pursuing his deliberate indifference claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971).  For the following reasons, the Court will dismiss certain of his claims as not plausible, and permit others to

---

[3] However, as Hiller is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

proceed. Hiller will be granted leave to amend his dismissed claims is he chooses to do so.

When certain constitutional violations are committed by federal actors, the remedy lies under *Bivens*. *See, e.g.*, *Ynfante v. United States*, Civ. A. No. 13-767, 2015 WL 631055, at *5 (M.D. Pa. Feb. 12, 2015) ("In contrast to FTCA actions, a *Bivens* claim can only be asserted against individual officials."). The Supreme Court has recognized an implied cause of action where prison officials are deliberately indifferent to a prisoner's serious medical needs. *See Carlson v. Green*, 446 U.S. 14 (1980). Here, Hiller seeks to invoke *Bivens* based on allegations that prison personnel were deliberately indifferent to his serious medical needs following an altercation in which he was injured, with the result that his treatment was delayed. To state a constitutional claim based on a delay or denial of medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[4] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly

---

[4] The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fifth Amendment governs claims brought by pretrial detainees in federal custody. *See Bistrian v. Levi*, 912 F.3d 79, 91 (3d Cir. 2018); *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under these amendments for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (per curiam).

alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Additionally, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference." *Id.* at 236.

Finally, a *Bivens* cause of action based on a theory of deliberate indifference to a prisoner's proper medical care generally cannot be asserted against persons who had no direct involvement in that medical treatment. *Accord Balter v. United States*, 172 F. App'x 401, 403 (3d Cir. 2006). Rather, a plaintiff must allege plausibly that each official he has named violated his constitutional rights "through the official's own individual actions." *Iqbal*, 556 U.S. at 676. Thus, to be plausible, a *Bivens*-based deliberate indifference claim must allege that a Defendant personally refused, delayed or prevented Hiller from receiving medical care. *See Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) (finding that the district court properly dismissed prison officials who were sued "based on their failure to take corrective action when grievances or investigations were referred to them"); *Jackson v. Grondolsky*, Civ. A. No. 09-5617, 2011 WL 13704 at *1 n. 1 (D.N.J. Jan.3, 2011) (surveying applicable Third Circuit precedent regarding supervisory liability in the prisoner medical treatment context and holding that no cause of action against a prison warden would lie where the only allegation supporting the claim was that the warden failed to take action after being presented with plaintiff's administrative grievances);

*Garvey v. Martinez*, Civ. A. No. 08-2217, 2010 WL 569852 at *7 (M.D. Pa. Feb.11, 2010) (rejecting prisoner's *Bivens* deliberate indifference claim against defendant prison warden where the warden was not personally involved in decisions regarding plaintiff's medical care and became aware of plaintiff's situation solely through the administrative grievance process) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)).

      **1.**      **Count One - Claim Against Sogo**

In Count One of his Complaint, Hiller alleges that Defendant Sogo, a registered nurse, was deliberately indifferent to his serious medical needs when she provided inadequate care following his injury. (ECF No. 1 at 9.) According to the Complaint, Defendant Sogo, with Defendant Castillo, responded to a distress call and escorted Hiller to the infirmary for medical attention after Hiller was injured. Defendant Sogo is alleged to have examined Hiller and determined that he had suffered numerous injuries, including swelling on the left side of his chin and a one and one-half inch laceration on the back of his head. (*Id.* at 5.) Sogo is alleged to have told Hiller he would need to go to the hospital. (*Id.*) It is also alleged that Sogo provided a "patch" for the open wound on the back of Hiller's head. (*Id.* at 9.) It is further alleged that, when the doctor did not arrive timely, Defendant Sogo followed up to determine the cause for the delay. (*Id.* at 6.) Hiller claims that Defendant Sogo's conduct amounted to a denial of access to immediate medical care. (*Id.* at 9.)

The allegations reflect that Defendant Sogo promptly examined Hiller and provided care, and that she requested further medical attention for Hiller and followed up when the expected medical professional did not arrive promptly. However, they also reflect that Hiller's condition was obviously deteriorating during the hours after Sogo provided a patch for the neck laceration. There are no allegations that she provided further care in the face of Hiller's deteriorating

condition and the delayed arrival of the requested additional care. Drawing every inference in Hiller's favor, the allegations state a plausible claim, and Hiller will be permitted to proceed on this claim.

### 2. Count Two - Claim Against Castillo

In Count Two of his Complaint, Hiller alleges that Defendant Castillo, a prison guard, was deliberately indifferent to his serious medical needs when Castillo delayed Hiller's access to medical care. (*Id.* at 9-10.) According to the Complaint, Defendant Castillo, with Defendant Sogo, responded to a distress call and escorted Hiller to the infirmary for medical attention after Hiller was injured. Defendant Castillo is alleged to have been present while Defendant Sogo provided medical care to Hiller and called a doctor. (*Id.* at 5.) Castillo is then alleged to have secured Hiller in a cage in a lieutenant's office to wait for the doctor's arrival. Defendant Castillo is further alleged to have returned to check on Hiller and followed up to determine why the expected doctor had not arrived yet. (*Id.* at 6.) Hiller claims that Castillo declined Hiller's request to go to the hospital and delayed Hiller's access to medical care for more than four hours, and was, therefore, deliberately indifferent to Hiller's serious medical needs. (*Id.* at 10.)

Defendant Castillo is alleged to be a lieutenant prison guard, not medical personnel, and as a nonmedical employee he was generally entitled to defer to the medical professional - Defendant Sogo - caring for Hiller. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) ("Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."); *see also Bearam v. Wigen*, 542 F. App'x 91, 92 (3d Cir. 2013) (per curiam) ("[A]s nonmedical personnel, Wigen is entitled to presume the competence of medical staff in treating a prisoner, meaning that his conduct cannot, without

much more, amount to 'deliberate indifference.'"). However, as with Sogo, Hiller's allegations also reflect that Hiller's condition was obviously deteriorating during the hours after Sogo provided a patch for the neck laceration. There are no allegations that Castillo observed her providing further care in the face of Hiller's deteriorating condition and the delayed arrival of the requested additional care. Drawing every inference in Hiller's favor, the allegations state a plausible claim, and Hiller will be permitted to proceed on this claim.

### 3. Count Three - Claim Against Sogo and Castillo

In Count Three of his Complaint, Hiller alleges that Defendants Sogo and Castillo were deliberately indifferent to Hiller's serious medical needs when they failed to provide him immediate access to medical care, deprived him of access to a hospital, and locked him in a small cage while he waited for medical care. (*Id.* at 10.) As stated above, Hiller plausibly alleges that although Defendant Sogo provided some care to Hiller of which Castillo was aware, Hiller's condition deteriorated significantly following that care, and no further medical assistance was provided by either Defendant during the hours that Hiller waited for the arrival of additional medical personnel. Drawing every inference in favor of Hiller, the allegations in Count Three state a plausible claim and Hiller will be permitted to proceed on this claim.

### 4. Count Four - Claim Against Kistler

In Count Four of his Complaint, Hiller alleges that Defendant Kistler, a nurse practitioner at the Federal Detention Center, acted with deliberate indifference to Hiller's serious medical needs when, having been contacted by the Federal Detention Center about a prisoner who required emergency medical care, she disregarded the emergency and continued with her daily workout. (*Id.* at 11.) As a result of Defendant Kistler's conduct, Hiller alleges that his care was delayed for more than four hours. (*Id.*) Upon examining Hiller, Defendant Kistler advised him

9

that the wound on his head needed to be cleaned and sutured. When he requested a sedative for the pain, she reportedly provided one. (*Id.* at 7.) She then prepared the area for suturing by shaving it, sutured the wound, and escorted Hiller to the Special Housing Unit with a package of ointment and 12 800 mg Ibuprofen tablets. (*Id.*)

Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Here, according to the Complaint, Defendant Kistler delayed Hiller's medical treatment to continue with her personal schedule, notwithstanding the fact that she had been contacted to address an emergency. Hiller's claim against Defendant Kistler is plausible and he will be permitted to proceed with this claim.

### 5.     Count Five - Claims Against John Does

In Count Five of his Complaint, Hiller alleges that Defendant John Doe, identified as Captain of the prison's guards at the Federal Detention Center, and Defendant John/Jane Doe, identified as the Health Services Administrator responsible for the medical department at the Federal Detention Center, were deliberately indifferent to Hiller's serious medical needs in that they failed to provide adequate training to staff for serious medical emergencies, with the result that Defendants Sogo, Castillo and Kistler deprived Hiller of adequate medical attention for four hours following his injury. (ECF No. 1 at 11-12.) These Doe Defendants are also alleged to have failed to maintain policies and training, which resulted in the delay of medical care to Hiller. (*Id.* at 12.) The Court understands Hiller to be asserting claims against these Doe Defendants based on their position as supervisors.

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Hiller has not alleged any facts suggesting that the Doe Defendants identified in Count Five participated in violating Hiller's rights, or that they had knowledge of or acquiesced in the allegedly violative conduct. His claim is based on failure to train and maintain adequate policies. For the following reasons, his claim is not plausible.

"Under Section 1983, a supervisor may be liable for [his or her] failure to train or supervise employees. . . ." *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008). A claim for supervisory liability or liability based upon a failure to train involves four elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be

said to represent official policy," *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable. In addition,

> In resolving the issue of [supervisory] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training. . . . Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.

*Id*. at 390-91.

Here, Hiller has not identified any policy that caused the alleged violation of his constitutional rights, nor has he alleged facts satisfying the remaining elements of a supervisory liability claim. He has merely alleged in conclusory fashion that the Doe Defendants failed to maintain appropriate policies. Similarly, he has not identified any deficiency in any training program that might be related to his alleged constitutional injury, but merely alleged that the training provided at the Federal Detention Center was deficient. Assuming without deciding that a *Bivens* remedy is available against supervisory officials sued for their alleged failure to train and maintain appropriate policies, Hiller has not stated a plausible claim against these Defendants and this claim will be dismissed. However, because the Court cannot determine with certainty that Hiller will not be able to state a plausible claim, he will be permitted to amend this claim.

### 6. Count Six - Claim Against Marler

In Count Six of his Complaint, Hiller purports to allege a claim for supervisory liability against Warden Sean Marler that is similar to the claim he advanced in Count Five. (ECF No. 1 at 12.) According to the Complaint, Marler failed to properly manage the training of

subordinates in how to manage serious medical emergencies and failed to maintain policies regarding emergencies, which resulted in the delay in Hiller's receipt of treatment. (Id. at 12-13.) The Court understands Hiller to be asserting a claim against Defendant Marler based on his supervisory position as Warden, but Hiller has not alleged any facts suggesting that Marler participated in violating Hiller's rights, or that he had knowledge of or acquiesced in such conduct. The claim is based on failure to train and maintain adequate policies. For the following reasons, his claim is not plausible.

"Under Section 1983, a supervisor may be liable for [his or her] failure to train or supervise employees. . . ." *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008). A claim for supervisory liability or liability based upon a failure to train involves four elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable. In addition,

> In resolving the issue of [supervisory] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training. . . . Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.

*Id*. at 390-91.

Here, Hiller has not identified any policy that caused the alleged violation of his constitutional rights, nor has he alleged facts satisfying the remaining elements of a supervisory liability claim. He has merely alleged in conclusory fashion that Defendant Marler failed to maintain appropriate policies. Similarly, he has not identified any deficiency in any training program that might be related to his alleged constitutional injury, but merely alleged that the training provided at the Federal Detention Center was deficient. Assuming without deciding that a *Bivens* remedy is available against supervisory officials sued for their alleged failure to train and maintain appropriate policies, Hiller has not stated a plausible claim against Defendant Marler and this claim will be dismissed. However, because the Court cannot determine with certainty that Hiller will not be able to state a plausible claim, he will be permitted to amend this claim.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Hiller leave to proceed *in forma pauperis*. Hiller may proceed on his deliberate indifference claims against Defendants Sogo, Castillo, and Kistler. His supervisory liability claims against the Doe Defendants and Defendant Marler are dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Hiller will be permitted to file an amended complaint within thirty (30) days in the event he can state a plausible claim. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). If he fails to file an amended complaint, his Complaint will be served on Sogo, Castillo, and Kistler only. An appropriate Order follows.

BY THE COURT:

/s/ Cynthia M. Rufe

_____
**CYNTHIA M. RUFE, J.**