**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KEVIN HILLER,**<br>**Plaintiff,**<br>**v.**<br>**SOGO, et al.**<br>**Defendants** | **CIVIL ACTION NO. 20-4445** |

**MEMORANDUM OPINION**

**Rufe, J.** **July 7, 2022**

Plaintiff Kevin Hiller, a prisoner currently incarcerated at FCI Hazelton, has filed a *pro se Bivens* Complaint against Defendants Nurse Akinwale Sogo, Nurse Practitioner Ramona Kistler, and Lieutenant Jorge Castillo ("Defendants"), officials at the Federal Detention Center ("FDC"). Plaintiff alleges that, following an incident at the FDC in September 2018, Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Now before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint. For the reasons set forth below, Defendants' Motion will be granted in part and denied in part.

## I. FACTUAL ALLEGATIONS[1]

On September 8, 2018, at approximately 8:00 a.m., Plaintiff was involved in an altercation with another inmate at the FDC, who stabbed Plaintiff in the back of the head with a

[1] At this preliminary stage of litigation, the Court "accept[s] all factual allegations in the complaint as true and construe[s] those facts in the light most favorable to the plaintiff." *Hart v. City of Phila.*, 779 F. App'x 121, 124 (3d Cir. 2019).

homemade knife.[2] Plaintiff suffered a 1.5-inch laceration to the back of his head and swelling on his chin.[3]

Defendants Castillo and Sogo responded to a distress call and escorted Plaintiff to the infirmary.[4] Defendant Sogo dressed Plaintiff's wound and told Plaintiff that the injury would require hospital attention if it was not swiftly sutured.[5] After Sogo determined that he was not medically qualified to apply stitches, Defendant Kistler, the on-call nurse practitioner, was called in to suture the wound. In the interim, Plaintiff was placed in a holding cell outside of Defendant Castillo's office.[6]

Around 10:00 a.m., Plaintiff's condition deteriorated.[7] While using the restroom, Plaintiff became dizzy, vomited, and fell to the floor.[8] After regaining balance, Plaintiff asked to be taken to the hospital.[9] Defendant Castillo responded that Kistler was on her way.[10] Soon after, Plaintiff lost consciousness.[11] Plaintiff was awakened by a group of female inmates who were walking past his holding cell, and regained consciousness suffering from head pain and blurry vision.[12] Around 12:45 p.m., nearly five hours after the altercation, Defendant Kistler arrived.[13]

---

[2] Compl. [Doc. No. 1] at ECF pages 4-5.

[3] Compl. [Doc. No. 1] at ECF page 5.

[4] Compl. [Doc. No. 1] at ECF page 5.

[5] Compl. [Doc. No. 1] at ECF page 5.

[6] Compl. [Doc. No. 1] at ECF page 5.

[7] Compl. [Doc. No. 1] at ECF page 6.

[8] Compl. [Doc. No. 1] at ECF page 6.

[9] Compl. [Doc. No. 1] at ECF page 6.

[10] Compl. [Doc. No. 1] at ECF page 6.

[11] Compl. [Doc. No. 1] at ECF page 6.

[12] Compl. [Doc. No. 1] at ECF page 6.

[13] Compl. [Doc. No. 1] at ECF page 6.

When Plaintiff asked why it had taken her so long to arrive, Kistler remarked that she was "working out" and "didn't think it was that serious."[14] After Kistler finished suturing the wound, Plaintiff was escorted to the Special Housing Unit, with ointment and ibuprofen tablets.[15] When Plaintiff woke up the next morning, his wound was bleeding and he felt nauseous, dizzy, and confused.[16] He also experienced blurred vision and headaches.[17]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8, a plaintiff must present a "short and plain statement of the claim showing that the pleader is entitled to relief."[18] To survive a Rule 12(b)(6) motion to dismiss, the statement must "state a claim to relief that is plausible on its face."[19] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] In evaluating pleadings documents submitted by *pro se* litigants, a court will construe the claims liberally.[21]

## III. DISCUSSION

Defendants have moved to dismiss the Complaint under Rule 12(b)(6), arguing failure to exhaust, absolute immunity, and qualified immunity.

---

[14] Compl. [Doc. No. 1] at ECF page 7.

[15] Compl. [Doc. No. 1] at ECF page 7.

[16] Compl. [Doc. No. 1] at ECF page 7.

[17] Compl. [Doc. No. 1] at ECF page 7.

[18] Fed. R. Civ. P. 8(a)(2).

[19] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678.

[21] *Higgs v. Atty Gen. of the U.S.*, 655 F.3d 333 (3d Cir. 2011).

**A. Failure to Exhaust**

Under the standards set forth in the Prison Litigation Reform Act, an inmate must exhaust the available administrative remedies prior to pursuing an action under federal law.[22] Nevertheless, inmates are not required to plead exhaustion, which is more appropriately raised as an affirmative defense.[23]

Defendants initially asserted that Plaintiff did not pursue administrative recourse until March 2019, more than six months after the incident.[24] However, after Plaintiff argued in his response that he followed administrative procedures but FDC staff misplaced the documentation,[25] Defendants' reply asserts that the Court need not reach the exhaustion issue, and seeks to preserve the issue for consideration at summary judgment.[26] Therefore, the Court will not dismiss the Complaint on exhaustion grounds at this time.

**B. Defendant Kistler**

42 U.S.C. § 233(a) precludes Plaintiff's *Bivens* claim against Defendant Kistler, an official employee of the United States Public Health Services ("PHS").[27] In *Hui v. Castaneda*, the Supreme Court interpreted § 233(a) to "grant absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the

---

[22] 42 U.S.C. § 1997e(a).

[23] *Jones v. Bock*, 549 U.S. 199, 212 (2007). Plaintiff claims that he has exhausted administrative remedies, but he has not provided any details or documentation of this exhaustion. Compl. [Doc. No. 1] at ECF page 4. Under *Bock*, Plaintiff has no obligation, at this stage, to offer evidence that he exhausted his available administrative remedies.

[24] Mot. Dismiss [Doc. No. 26] at 8–9.

[25] *See* Pl.'s Opp'n. Mot. Dismiss Ex. A [Doc. No. 32] at ECF page 9 (Plaintiff highlights a portion of the March 2019 remedy form that reads, in part, "this is my *second* BP-8").

[26] Defs' Reply Supp. Mot. Dismiss [Doc. No. 33] at 3.

[27] Defendant Ramona Kistler has submitted an affidavit, which has not been challenged, identifying herself as an employee of the PHS. Mot. Dismiss Ex. B [Doc. No. 26-2] at ECF page 2 (mislabeled in the filing's cover page as a second Exhibit A).

scope of their employment by barring all actions against them for such conduct."[28] The Court concluded that a straightforward textual analysis of §233(a) precluded *Bivens* actions against PHS officials.[29]

Defendant Kistler was an official PHS employee at the time of the incident,[30] and was acting within the scope of her office, as "proof of scope is in most § 233(a) cases established by a declaration affirming that the defendant was a PHS official during the relevant time period."[31] Therefore, Plaintiff's claim against Defendant Kistler is barred by 42 U.S.C. § 233(a).[32] Kistler has absolute immunity to a *Bivens* action, and this claim will be dismissed.

**C. Qualified Immunity**

Qualified immunity generally shields "government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[33] When a qualified immunity defense is raised on a motion to dismiss, the Third Circuit considers

[28] 559 U.S. 799, 806 (2010). In *Hui*, the plaintiff brought a *Bivens* action against a PHS employee, alleging that the official was deliberately indifferent to his severe medical needs. The plaintiff, an inmate at the San Diego Correctional Facility, developed painful lesions on his penis, for which he continually sought treatment. For almost a year – and over the objections of multiple outside specialists who advised that plaintiff receive a biopsy – plaintiff was treated solely with ibuprofen and antibiotics. Finally, after a fourth specialist recommended a biopsy, the procedure was scheduled, revealing penile cancer. Within months, the cancer had metastasized, and, after unsuccessful treatment, plaintiff died.

[29] *Id.* at 806; *see also Credico v. FDC Phila MLP Bokhari*, No. CV 16-3726, 2017 WL 2903158, at *1 (E.D. Pa. July 7, 2017) (holding that the Federal Torts Claim Act is "the exclusive avenue for relief for claims arising out of PHS employee conduct"); *Gomez v. Cullen*, No. 21-2776, 2022 WL 1183713, at *2 (3d Cir. Apr. 21, 2022) (same).

[30] Mot. Dismiss Ex. B [Doc. No. 26-2] at ECF page 2 (mislabeled in the filing's cover page as a second Exhibit A).

[31] *Hui*, 559 U.S. at 811.

[32] Under 42 U.S.C. § 233(a), Plaintiff's remedy for any alleged misdeeds by Kistler would be a suit against the United States of America under the Federal Tort Claims Act. Plaintiff filed such a suit in a parallel action before this Court, but voluntarily withdrew that suit without prejudice following a motion to dismiss his FTCA claims as time-barred. *See Hiller v. United States of America*, No. 20-4451 (E.D. Pa. filed Sept. 8, 2020).

[33] *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

"whether the complaint contains plausible allegations of a constitutional violation . . . and whether the asserted constitutional right is clearly established."[34]

Prison authorities violate an inmate's Eighth Amendment rights when they are deliberately indifferent to the inmate's serious medical need.[35] Under the two-pronged *Estelle* standard, prison officials must be deliberately indifferent, and the inmate's medical needs must be serious. Prison officials act with deliberate indifference if they consciously disregard a substantial risk of serious harm.[36] Mere negligence does not suffice.[37] A condition constitutes a serious medical need where the "failure to treat could lead to substantial and unnecessary suffering,"[38] or where the consequences of delaying treatment include the "unnecessary and wanton infliction of pain."[39]

Prison authorities are given considerable deference in their diagnostic and treatment decisions.[40] Generally, where an inmate has received "some amount of medical treatment, it is difficult to establish deliberate indifference."[41] Nonetheless, there are circumstances in which the medical care that is provided is constitutionally inadequate.[42] For instance, prison officials meet the deliberate indifference standard when they "deny reasonable requests for medical

[34] *Karkalas v. Marks*, 845 F. App'x 114, 118 (3d Cir. 2021).

[35] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

[36] *Farmer v. Brennan*, 511 U.S. 825, 847–49 (1994); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (quotation and citation omitted) (holding that a prima facie case of deliberate indifference requires a plaintiff to show that a "defendant acted with a sufficiently culpable state of mind.").

[37] *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993)*; see also Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) ("Allegations of medical malpractice are not sufficient to establish a Constitutional violation.").

[38] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quotation and citation omitted); *see also Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (a medical condition is serious if a "lay person would easily recognize the necessity for a doctor's attention.") (quotation and citation omitted).

[39] *Monmouth Cnty.*, 834 F.2d at 347.

[40] *Durmer*, 991 F.2d at 67.

[41] *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017).

[42] *Id.* (quoting *Monmouth Cnty.*, 834 at 346).

treatment…and such denial exposes the inmate to 'undue suffering or the threat of tangible residual injury[.]'"[43] Additionally, officials may not "opt for an easier and less efficacious treatment of the inmate's condition."[44]

1. Defendant Sogo

For purposes of the motion to dismiss, Plaintiff's allegations against Defendant Sogo satisfy both prongs of the *Estelle* inquiry. First, Plaintiff makes a plausible allegation that Sogo consciously disregarded a substantial risk of serious harm and therefore was deliberately indifferent to his medical needs.[45] Second, the stab wound, as described by Plaintiff, constituted a severe medical condition, and the delayed treatment of Plaintiff's wound led to substantial and unnecessary suffering.[46]

Plaintiff alleges that Defendant Sogo was aware that a delay in treatment posed a serious danger to Plaintiff's health.[47] Yet, after dressing the wound, Sogo left Plaintiff in a holding cell with minimal medical supervision for over four hours.[48] During this period, Plaintiff vomited and fainted, and was not awakened until a group of inmates noticed that he was bleeding.[49] The Complaint therefore alleges a claim of deliberate indifference against Sogo based on Sogo's purported failure to monitor or treat Plaintiff's wounds for more than four hours.[50]

[43] *Monmouth Cnty.*, 834 F.2d at 346 (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976).

[44] *Palakovic*, 854 F.3d at 228 (internal quotation marks omitted).

[45] Compl. [Doc. No. 1] at ECF page 9.

[46] Compl. [Doc. No. 1] at ECF pages 5–6.

[47] Compl. [Doc. No. 1] at ECF page 5 (Defendant Sogo informed Plaintiff that he would "need a hospital if we don't close this thing up soon.").

[48] Pl.'s Opp'n. Defs' Reply [Doc. No. 34] at ECF page 3.

[49] Compl. [Doc. No. 1] at ECF page 6. Defendants maintain that Sogo continued to monitor Plaintiff. Mot. Dismiss [Doc. No. 26] at ECF page 20.

[50] *Palakovic*, 854 F.3d at 227.

Because Plaintiff has stated a claim against Sogo for deliberate indifference to a serious medical need and the right for prisoners to be free from cruel and unusual punishment is well-established, Defendant Sogo is not entitled to a finding of qualified immunity at this preliminary stage.

2. Defendant Castillo

Non-medical prison officials are typically entitled to defer to the medical judgment of licensed professionals.[51] Once a prisoner is under the care of medical personnel, the prison official "will generally be justified in believing that the prisoner is in capable hands."[52] A non-medical official is only deliberately indifferent where denial of treatment exposes an inmate to "undue suffering or the threat of tangible residual injury;" where knowledge of an inmate's injury is accompanied by intentional refusal to provide care; or where the official denies access to capable providers or recommended treatments.[53]

Plaintiff asserts that, given his rapidly deteriorating condition, Castillo's refusal to "summon[] outside help from a local hospital" was evidence of deliberate indifference.[54] The Third Circuit has held, however, that "absent a reason to believe (or actual knowledge) that prison doctors . . . are mistreating (or not treating) a prisoner, a non-medical prison official" cannot be found deliberately indifferent for flaws in that prisoner's medical care.[55] Therefore, because Defendant Castillo delegated medical treatment decisions to Defendant Sogo – who provided some initial care to Plaintiff – Castillo cannot be considered deliberately indifferent for

---

[51] *Smith v. O'Boyle*, 251 F. App'x 87, 89 (3d Cir. 2007); *Durmer*, 991 F.2d at 69.

[52] *Spruill*, 372 F.3d at 236.

[53] *Monmouth Cnty.*, 834 F.2d at 346–47 (internal quotation and citation omitted).

[54] Pl.'s Opp'n. Mot. Dismiss [Doc. No. 32] at ECF page 5.

[55] *Spruill*, 372 F.3d at 236.

failing to respond to Plaintiff's medical complaints. Plaintiff also alleges that Sogo informed Castillo that he was not qualified to apply sutures, and Castillo decided to wait for Kistler and monitor Plaintiff's condition, rather than transporting Plaintiff to the hospital.[56] However, Plaintiff claims that Sogo had provided some care, and that Kistler was summoned after Sogo indicated that additional care was needed. Considering the active involvement of medical professionals, and Plaintiff's allegation that Castillo did not know that Kistler would be delayed by nearly five hours,[57] Castillo's decision not to remove Plaintiff from Sogo's care does not rise to the level of deliberate indifference. Therefore, Castillo is entitled to qualified immunity for claims arising from his delegation of Plaintiff's medical care to Sogo, and the claim against him will be dismissed.

## IV. CONCLUSION

Defendants' motion to dismiss will be granted as to the claims against Defendants Kistler and Castillo, and denied as to Defendant Sogo. An order will be entered.

[56] Compl. [Doc. No. 1] at ECF pages 5–6.

[57] *See Comp.* [Doc. No. 1] at ECF page 6 (claiming that Castillo told Plaintiff that Kistler was "on her way," and was surprised by Kistler's extended delay).